164 F.Supp.2d 1153 (2001)
In re WORLD WAR II ERA JAPANESE FORCED LABOR LITIGATION.
This Document Relates To:
Resus
v.
Mitsui & Co., Ltd., et al,
Llanza
v.
Mitsui & Co. (USA), Inc., et al,
Saldajeno
v.
Ishihara Sangyo Kaisha Ltd., et al.,
Santo Domingo
v.
Ishihara.
No. MDL-1347. Nos. 00-3313, 00-3240, 00-2960, 00-3828.
United States District Court, N.D. California.
September 17, 2001.
*1154 William S. Lerach, Frank J. Janecek, Elizabeth J. Arleo, Patrick W. Daniels, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, John J. Bartko, William I. Edlund, Bartko Zankel Tarrant & Miller, San Francisco, CA, Albert H. Meyerhoff, Milberg Weiss Bershad Hynes & Lerach LLP, Los Angeles, CA, Steve W. Berman, Jeffrey T. Sprung, Hagens Berman, P.S., Seattle, WA, Kevin P. Roddy, Hagens Berman LLP, Los Angeles, CA, Michael Goldstein, Law Offices of Michael Goldstein, Cardiff, CA, for World War II Era Japanese Forced Labor Litigation, Gloria Tyler Alfano, Shang-Ting Sung.
Daniel C. Girard, Anthony K. Lee, Gordon M. Fauth, Girard & Greene LLP, San Francisco, CA, Jay W. Eisenhofer, Grant & Eisenhofer, P.A., Wilmington, DE, for James O. King.
David S. Casey, Jr., Bonnie E Kane, Wendy M Behan, Herman Mathis Casey & Kitchens LLP, San Diego, CA, James W. Parkinson, Palm Desert, CA, Joe R Reeder, C Allen Foster, Greenberg Traurig, Washington, DC, Maury Herman, Russ M Herman, Leonard A Davis, David K Fox, Herman Middleton Casey & Kitchens LLP, New Orleans, LA, Ronald W Kleinman, Greenberg Traurig, Washington, DC, for Woodrow M. Hutchinson, Manuel A. Eneriz, Melody Solis, Harold W. Poole, Ernest Harold Liy, Robert C. Clark, Francis W., Clarence S. Kellogg, Harry Corre, Raymond Heimbuch, Vivian O. Johnson, William R. Lowe, Sam P. Buse, Alfred Berest, Edwin F. Lindros, Michael Bibin, J.S. Gray, Karl William Holt, Norman R. Matthews, Darrel D. Stark, Carmel Zipeto, Manuel A. Eneriz, Lester I. Tenney, Shirley M. Rubenstein, Julia E. Stevenson, Glen Leroy Bailey.
Scott W. Wellman, Wellman & Warren LLP, Irvine, CA, Robert A. Swift, Kohn Swift & Graf, Philadelphia, PA, Edward D. Fagan, Fagan & Associates, New York, NY, Scott R Warren, Wellman & Warren LLP Irvine, CA, Denis Sheils, Kohn Swift & Graf, PC, Philadelphia, PA, Michael Witti, Monchen (Bogenhausen), Germany, Henry Burstyner Glennen, Burstyner & CO, Melbourne, Australia, for Raymond Wheeler.
William S. Lerach, Frank J. Janecek, Elizabeth J. Arleo, Patrick W. Daniels, Milberg, Weiss, Bershad Hynes & Lerach LLP, San Diego, CA, Michael Rubin Altshuler, Berzon Nussbaum Rubin & Demain, San Francisco, CA, Howard D. Finkelstein, Finkelstein & Associates, San Diego, CA, Albert H. Meyerhoff, David R. *1155 Scott, Neil Rothstein, Scott & Scott, LLC, Colchester, CT, Jonathan W. Cuneo, Cuneo Law Group, P.C., Washington, DC, Steve W. Berman, Jeffrey T. Sprung, Hagens Berman, P.S., Seattle, WA, Henry H. Rossbacher, Rossbacher & Associates, Los Angeles, CA, Kevin P. Roddy, Hagens Berman, LLP, Los Angeles, CA, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, L. Thomas Galloway, Galloway & Associates, Boulder, CO, for Finnie B. Price.
Dennis Sheils, Robert A. Swift, Kohn Swift & Graf, PC, Philadelphia, PA, Michael Witti, Henry Burstyner, Scott W Wellman, Scott R Warren, Wellman & Warren, Laguna Hills, CA, Edward D Fagan, Fagan & Associates, Livingston, NJ, Brent A Granado, Wellman & Warren LLP, Laguna Hills, CA, for Frank A. Mente, Neville J. Booker.
Michael Witti, Henry Burstyner, Scott W Wellman, Scott R Warren, Wellman & Warren, Laguna Hills, CA, Robert A. Swift, Kohn Swift & Graf, Philadelphia, PA, Edward D Fagan, Fagan & Associates, Livingston, NJ, for H. Joseph Terrence.
Daniel C. Lieb, Samuel Leib, for Garth Dunn.
Paul F. Doyle, Kelley Drye & Warren, LLP, New York City, Sabina A. Helton, Kelley Drye & Warren LLP, Los Angeles, CA, for Ruben Resus, Carlos Cadenilla.
Christopher B. Hockett, Rebecca M. Archer, David M. Balbanian, McCutchen Doyle Brown & Enerson, LLP, San Francisco, CA, for Mitsui & Co., Ltd., Mitsui & Co. (USA), Inc.
Nathan Lane, III, Joseph A. Meckes, Squire Sanders & Dempsey LLP, San Francisco, CA, for Mitsui Engineering & Shipbuilding Co., Ltd., Paceco Corp., Ishihara Corp. (U.S.A.), ISK Americas, Inc.
Robert A. Sacks, Sullivan & Cromwell, Los Angeles, CA, for Nippin Steel USA Inc., Nippon Steel Corp., Nippon Steel Trading Co., Ltd., Nippon Steel Trading America.
Arne D. Wagner, Tamu K. Sudduth, Kathleen V. Fisher, Phyllis A. Oscar, Morrison & Foerster, LLP, San Francisco, CA, for Mitsubishi Corp., Mitsubishi Intern. Corp.
John H. Beisner, Teresa E. Dawson, John F. Niblock, Benjamin R Jacewicz, Carrielyn D Guymon, O'Melveny & Myers LLP, Washington, DC, for Mitsubishi Materials Corp., Mitsubishi Materials USA Corp.
Nathan M. Spatz, Barbara L Croutch, Michael J Finnegan, Pillsbury Winthrop LLP, Los Angeles, CA, Bruce E.H. Johnson, Davis Wright Tremaine, Seattle, WA, Martin L. Fineman, Davis Wright Tremaine, San Francisco, CA, Arthur W. Harrigan, Danielson Harrigan & Tollefson LLP, Seattle, WA, Richard R Holmquist, Danielson Harrigan & Tollefson LLP, Seattle, WA, for Mitsubishi Heavy Industries Ltd., Mitsubishi Heavy Industries America, Inc.
Linda E. Shostak, Lloyd W. Aubry, Jr., Kathryn M Davis, Morrison & Foerster LLP, San Francisco, CA, for Ishikawajima Harima Heavy Industries Ltd., IHI, Inc.
Shannon M. Hansen, Kirkland & Ellis, Los Angeles, CA, Thomas D. Yannucci, James F. Basile, Christopher Landau, Brant W. Bishop, Kirkland & Ellis, Washington, DC, for Sumitomo Heavy Industries Ltd., Sumitomo Heavy Industries (USA), Inc.
Robert S. Mueller, III, U.S. Attorney's Office, San Francisco, CA, David J. Anderson, Vincent M. Garvey, Department of Justice, Civil Division, Washington, DC, David W. Ogden, U.S. Attorney's Office, Torts Branch - Civil Division, San Francisco, CA, Martha Rubio, U.S. Department of *1156 Justice, Civil Div., Washington, DC, for U.S.
Peter I. Ostroff, Ronald L. Steiner, Mark E Haddad, Sidley Austin Brown & Wood, Los Angeles, CA, for Nippon Sharyo Ltd., Nippon Sharyo U.S.A., Inc.
Douglas E. Mirell, Loeb & Loeb LLP, Los Angeles, CA, Joseph Geisman, Loeb & Loeb LLP, Los Angeles, CA, Matthew E. Digby, Heidi A Leider, Bingham Dana LLP, Los Angeles, CA, for Japan Energy Corp.
Neil A.F. Popovic, Stephen V. Bomse, Rakesh K. Anand, Heller Ehrman White & McAuliffe, San Francisco, CA, for Showa Denko America, Inc.
Matthew E. Digby, Heidi Leider, Bingham Dana, Los Angeles, CA, for Mitsui Mining USA, Inc., Mitsui Mining Co., Ltd.
Richard M. Frank, Louis Verdugo, Jr., CA Attorney General's Office, Oakland, CA, Bill Lockyer, CA Attorney General, Los Angeles, CA, Catherine Z Ysrael, Attorney General, Los Angeles, CA, for People of State of Califronia, amicus curiae.

ORDER
WALKER, District Judge.
In these consolidated actions, plaintiffs from various countries seek damages and other remedies from Japanese corporations for their forced labor during World War II. The four matters in the above caption represent the classes of Filipino plaintiffs. On September 21, 2000, the court dismissed the claims of plaintiffs who were United States or Allied soldiers in the war based on the court's conclusion that the 1951 Treaty of Peace with Japan constitutes a waiver of such claims. In re World War II Era Japanese Forced Labor Litigation, 114 FSupp2d 939, 942 (N.D.Cal.2000) (Order No 4). Motions to dismiss brought by plaintiffs who were not members of the armed forces of the United States or its allies were not addressed by the order and remain pending with the court. The four matters involving Filipino plaintiffs were transferred to this court after the initial hearing on defendants' motions to dismiss. As a result, defendants now move to dismiss and/or for judgment on the pleadings in the actions involving Filipino plaintiffs.

I
The Filipino plaintiffs assert essentially the same claims as the other plaintiffs in these actions. Most notably, they seek compensation under California Code of Civil Procedure § 354.6, a law permitting an action by "any person who was a member of the civilian population conquered by the Nazi regime, its allies or sympathizers, or prisoner-of-war [of the same regimes] *** [to] recover compensation for labor performed as a Second World War slave labor victim *** from any entity or successor in interest thereof, for whom that labor was performed ***." CalCCP § 354.6. The Filipino plaintiffs also assert claims under California tort and common law, such as intentional infliction of emotional distress, conversion, unjust enrichment, constructive trust and unfair business practices prohibited by California Bus & ProfCode § 17200. One of the Filipino plaintiffs also asserts violations of the "law of nations."
Defendants argue that the claims of the four Filipino actions are barred by the Treaty of Peace with Japan for the same reasons the claims of the Allied POWs are barred. As noted in Order No 4, the treaty was signed at San Francisco on September 8, 1951, by the representatives of the United States and 47 other Allied powers and Japan. Treaty of Peace with Japan, [1952] 3 UST 3169, TIAS No 2490 (1951) (hereinafter, Treaty). The waiver provision in the treaty is Article 14(b). See id at 3183. In essence, that provision broadly waives "all" reparations and "other *1157 claims" of the "nationals" of Allied powers "arising out of any actions taken by Japan and its nationals during the course of the prosecution of the war." Id. Defendants argue that the Philippines was an "Allied Power," and thus the claims of any of its nationals are barred. The key issue for the court to address, therefore, is whether the Philippines is an "Allied power" subject to the provisions of the treaty.
Article 25 of the treaty defines "Allied Powers" for the purposes of the treaty. Id at 3190. In relevant part, that article provides that "the Allied Powers shall be the States at war with Japan, or any State which previously formed a part of the territory of a State named in Article 23, provided that in each case the State concerned has signed and ratified the Treaty." Id. The Philippines was an official signatory of the treaty. Id. at 3304. Article 23, which directs each signatory to ratify the treaty, specifically names the Republic of the Philippines. Id. at 3189. Indeed, the Philippines sent six representatives to the treaty negotiations to sign on behalf of the country: Carlos P Romulo, JM Elizalde, Vicente Francisco, Diosdado Macapagal, Emiliano T Tirona and VG Sinco. Id. The Philippines ratified the treaty on July 23, 1956, and deposited the ratification with the United States pursuant to Article 24 of the treaty. See MJ Bowman and DJ Harris, Multilateral Treaties Index and Status at 172 (Butterworths 1984) (Def Req for Judicial Notice (Doc # 200), Exh B). The treaty thus became effective in the Philippines on July 23, 1956. Id.
The Filipino plaintiffs do not dispute any of these facts. In fact, a professor submitting a declaration in support of their opposition explicitly states that "Article 14(b) is to be read as a waiver by the Philippines [sic] with respect to the claims of Filipino nationals `arising out of any action taken by Japan and its nationals in the course of the prosecution of the war.'" Magallona Decl (Doc # 249), ¶ 3.
In sum, because the Philippines is specifically named in Article 23 and the country both signed and ratified the treaty, under Article 25 the Philippines is an Allied power for purposes of the treaty. Treaty at 3190. The court finds, therefore, that for the reasons discussed in Order No 4, the Treaty of Peace with Japan bars the claims of the Filipino plaintiffs.

II
In an effort to avoid the preclusive effect of the treaty, the Filipino plaintiffs put forth several unpersuasive arguments, several of which were likewise asserted by the Allied plaintiffs but rejected in Order No 4. In their first and most prominent argument, the Filipino plaintiffs assert that their claims do not arise out of conduct taken "in the prosecution of the war." PlOppBr (Doc # 247) at 4-8. As the court noted in Order No 4, "[i]t is particularly far-fetched to attempt to distinguish between the conduct of Imperial Japan during the Second World War and the major industry that was the engine of its war machine." In re World War II, 114 FSupp2d at 948. The Filipino plaintiffs are asking the court to make that distinction.
The Filipino plaintiffs argue that their complaints are different from those in the Allied matters. Specifically, they contend that no facts are alleged which would permit the court to infer that defendants' conduct in the Philippines was taken in the course of the prosecution of the war. PlOppBr (Doc # 247) at 5. The court has reviewed the four Filipino complaints and finds this argument to be seriously disingenuous.
Three of the four complaints are filled with allegations equating the actions of defendants with those of Japan's efforts to *1158 prosecute the war. For example, the Llanza complaint asserts that "[t]he defendants, in collaboration and conspiracy with the Empire of Japan, developed plan [sic], scheme [sic] and/or common enterprises, through and by which the defendants enabled the Empire of Japan to conduct and execute the entire operations of World War II." Llanza compl, ¶ 64. The same complaint then asserts that "the Japanese government established programs whereby the Japanese companies could use the Filipino, and other allied civilians and POWs as slave or forced laborers *** `toward the prosecution of the Greater East Asiatic War.'" Id., ¶ 72 (quoting the Japanese Prisoners of War Bureau). Similarly, the Resus complaint alleges that a "Japanese military government de facto ruled the [Philippines] until it was liberated in February 1945 *** [and] appropriated ownership of non-Japanese owned industry and production which, in turn, commissioned or entrusted them to private Japanese companies including the defendants *** [who] forced Filipinos to work as slave and forced laborers." Resus compl, ¶¶ 104-05 (emphasis in original). The Saldajeno complaint asserts that "one of Japan's major purposes *** in occupying [the Philippines] was to exploit the *** large deposits of copper, coal, manganese and iron  all resources that Japan badly needed for its wartime efforts." Saldajeno compl, ¶ 37.
The Filipino plaintiffs ignore these allegations and, instead, hang their argument on the Santo Domingo complaint only. That particular action was initiated after the court issued Order No 4. Consequently, the plaintiffs in that matter have artfully attempted to plead around the Article 14(b) bar. The complaint alleges that "[o]ne of Defendants' *** goals from 1941-1945 was to exploit the natural resources in the area, especially mining resources, for their self-interest, profit, and financial gain, and not for the prosecution of the war." Santo Domingo compl, ¶ 27. Assuming that defendants' intent was not to prosecute the war by operating their businesses with the help of forced labor, however, does not establish that Japan's intent in "transacting business" with such defendants was not to help Japan prosecute the war. See id, ¶ 39. As defendants correctly point out, the treaty unambiguously waives all Allied claims "arising out of any actions taken by Japan and its nationals in the course of the prosecution of the war" regardless whether defendants sought to prosecute the war or simply sought financial gain. See Treaty at 3183 (emphasis added). Indeed, the fact that the Santo Domingo plaintiffs assert a claim under California Code of Civil Procedure § 354.6 demonstrates that they seek compensation for injuries arising in the course of Japan's prosecution of the war. As stated above, it would be a stretch to attempt to distinguish between the conduct of Japan during the war and the companies that supported its war machine. Overall, therefore, the allegations of the Filipino complaints demonstrate that their actions are within the scope of the treaty's waiver.
The Filipino plaintiffs also put forth several arguments that, at bottom, contend waiver of their claims renders the treaty unconstitutional under Filipino constitutional law and invalid under the fundamental norms of international law. See PlOppBr (Doc # 247) at 9-14. The court previously rejected similar arguments by the Allied plaintiffs. As stated in Order No 4, these arguments are "contrary to the well-settled principle that the government may lawfully exercise its `sovereign authority to settle the claims of its nationals against foreign countries.'" In re World War II, 114 FSupp2d at 948 (quoting Dames & Moore v. Regan, 453 U.S. 654, 679-80, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981); citing Neri v. United States, 204 *1159 F.2d 867, 868-69 (2d Cir.1953) (enforcing treaty waiver of reparations claims)). Whether waiver of the Filipino plaintiff's claims violates the constitutional law of the Philippines (as opposed to American constitutional law) is beside the point. Treaties made under the authority of the United States, such as the Treaty of Peace with Japan, are "the supreme Law of the Land." U.S. Const, Art VI. For challenges to such treaties brought in American courts, therefore, the relevant inquiry is whether the treaty complies with American law, not the law of another nation. As the Supreme Court concluded long ago:
The treaty is therefore a law made by the proper authority, and the courts of justice have no right to annul or disregard any of its provisions, unless they violate the Constitution of the United States. It is their duty to interpret it and administer it according to its terms. And it would be impossible for the executive department of the government to conduct our foreign relations with any advantage to the country, and fulfil the duties which the Constitution has imposed upon it, if every court in the country was authorized to inquire and decide whether the person who ratified the treaty on behalf of a foreign nation had the power, by its constitution and laws, to make the engagements into which he entered.
Doe v. Braden, 57 U.S. 635, 657, 16 How. 635, 14 L.Ed. 1090 (1853). Hence, the laws of the Philippines are not relevant for the court's analysis of a treaty made under the authority of the United States. See id.
The Filipino plaintiffs also argue that the waiver provision does not apply to them because the reparations agreement between Japan and the Philippines only releases Japan from claims to the extent of its payment of reparations. PlOppBr (Doc # 247) at 18-19. Applying the terms of the reparations agreement to trump the waiver provision of the treaty strains logic and simply contradicts the unambigous language of the reparations agreement. Specifically, the agreement releases Japan "from its reparations obligation" to the extent of Japan's payments under the agreement. See Reparations Agreement Between Japan and the Republic of the Philippines, Article 6 (Def Req for Judicial Notice (Doc # 200), Exh C at 4). Hence, the passage cited by the Filipino plaintiffs in Article 6 merely releases Japan from its reparations obligations as they are paid. Id. ("By and upon making a payment *** Japan *** shall be released from its reparations obligation to the extent of *** such *** payment."). The waiver provision in the treaty thus still applies.
Finally, the Filipino plaintiffs assert that the Alien Tort Claims Act (ATCA), 28 USC § 1350, provides the court with jurisdiction to hear the claims of the Filipino plaintiffs. See PlOppBr (Doc # 247) at 19-20. To be sure, the act provides district courts with "original jurisdiction" over claims by aliens for torts "committed in violation of the law of nations or a treaty of the United States." 28 USC § 1350. But the court has already determined that federal subject matter jurisdiction exists for claims, such as these, that are based on the federal common law of foreign policy and relations. In re World War II, 114 FSupp2d at 943-44. The Ninth Circuit's conclusion that the act also creates a cause of action for "violations of specific, universal and obligatory" norms under international law does not alter matters. See In re Estate of Ferdinand Marcos, Human Rights Litigation, 25 F.3d 1467, 1475 (9th Cir.1994) (citation omitted). The treaty precludes the claims of the Filipino plaintiffs regardless of the authority under which these claims are brought. Accordingly, the ATCA may enable this court to hear the Filipino plaintiffs' claims, *1160 but it does not eliminate the preclusive effect of the treaty.
For the foregoing reasons, defendants' motions to dismiss and/or for judgment on the pleadings are GRANTED with respect to the actions involving Filipino plaintiffs. The clerk shall enter judgment in the above-captioned cases.
IT IS SO ORDERED.